THE OAHU RAILWAY AND LAND COMPANY, Appellant, *v.* JONATHAN SHAW, Tax Assessor, First Division.

APPEAL FROM TAX APPEAL COURT.

SUBMITTED JANUARY 12, 1897.    DECIDED FEBRUARY 13, 1897.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE CARTER, IN PLACE OF FREAR, J., DISQUALIFIED

The value of a leasehold, for purposes of taxation, must be determined by the particular circumstances of each case.

The value of a leasehold for taxation purposes is its "full cash" value.

The value of a leasehold is not necessarily the net proceeds of the demised estate for eight years. Nor is it necessarily the net income for one year multiplied by the number of years unexpired of the term.

Opinions as to the value of a leasehold by disinterested persons familiar with such matters may be received.

### OPINION OF THE COURT BY JUDD, C.J.

Under the statute "Relating to Internal Taxes," &c., (Act 51 of the Laws of 1896) an appeal is allowed from the Tax Appeal Court to the Supreme Court. The assessor can appeal if the valuation placed by the Tax Appeal Court on the property is less than that placed by the assessor, and the tax-payer can appeal if the Tax Appeal Court places a valuation on the property higher than that returned by him. The appeal is heard by us on the evidence sent up and we may, in our discretion, allow further evidence to be introduced by either party.

We are judges of the facts in each case as well as the law. Jurisdiction to fix valuations upon property is now conferred upon us as the final court of appeal.

"Leaseholds and chattel interests in land" are by the statute included in the term "Personal Property," Sec. 16 (pages 131 and 132 of the Act). In the case before us the Oahu Railway and Land Company returned the value of their leaseholds of the lands of "Honouliuli," "Kahuku," "Waiawa," and another parcel of land belonging to the government, at $40,000. The assessor placed it at $103,000, and the plaintiff appealed to this court. The evidence sent up consists of statements made by Mr. B. F. Dillingham, the general manager of plaintiff's corporation, as to the rents paid to the respective lessors and those received by the plaintiff corporation from its sub-tenants, and various accounts showing and explaining his statements, and also the statement of the assessor, explanatory of the way he arrived at the valuation appealed from.

The adjudged cases in this court have disposed of some questions upon the subject of valuation of leaseholds for the purposes of taxation. In *Hilo Sugar Co. v. Tucker*, 8 Haw. 148, this court, per Dole, J., held that "the reversion and the leasehold interests of real estate held under lease are together worth only the unincumbered value of the land. There may be, in certain circumstances, exceptions to this rule, but it must be generally regarded as giving the true status of the mutual relations of such interests." In *Knudsen v. Stolz*, id. 81, we held, per McCully, J., that it was illegal to fix the valuation of a contract for cultivating sugar cane on shares at the full amount of the profits for the rest of the term of the contract. A proper deduction from this case applied to the one at bar would be that the value of the leaseholds are not the net profits made by the lessees in question from the lands for the year 1896 multiplied by the number of years of the unexpired terms. Such a method of valuation would run up the value of the leaseholds, the terms being long, to an enormous figure, far

beyond the value of the land itself and contrary to the doctrine of *Hilo Sugar Co. v. Tucker, supra.*

What, then, should be the basis of valuation? What rule or principle of valuation of a leasehold interest in land can be adopted which shall be uniform in its application?

The legislature has established the rule upon which the reversion of land when leased may be valued for taxation purposes, at eight years' rental thereof, "unless such valuation shall be manifestly unfair or unjust," (last clause of Sec. 17 of the Taxation Act, pp. 132-3). The case of *Parker v. Shaw,* 9 Haw. 407, discloses a state of affairs where the application of this rule would be manifestly unfair and unjust to the government. In that case the lease at a very low rental had less than six years unexpired of its term and the land, unincumbered by the lease, was worth far more than eight years of the rental. The statute, however, gives no authority to fix the value of a leasehold at eight times either of the excess of the rent received by the lessee of his sub-tenants over and above that paid by him to his landlord, multiplied by eight, or, if the lessee used the land himself, the annual net profit produced multiplied by eight. The only rule the law has fixed is, that personal property shall be subject to an annual tax of one per cent. upon "the full cash value of the same." (Sec. 14, p. 131 of the Act.)

This is the only rule we can apply. Now in determining the full cash value of an article of commerce, readily reproduced according to demand, its market value as shown by sales would be a fair valuation. But the value of a leasehold depends upon many circumstances, as the amount of rent reserved by the lease, the privileges, covenants and conditions in the indenture, the location of the land, the uses to which it can be put, the population in the locality, the prospects for further development of its resources, and we might add, all other considerations economic or political which affect values in general. The amount of the rent reserved is a very important circum-

stance.   There are fewer purchasers of leaseholds subject to large annual rentals than where the rent is small in amount. There are cases, and the one at bar is a good example, where the probable purchasers of the leaseholds either at public or private sale would be extremely limited in number.   We know of no better evidence of such value to be laid before the court, than the estimates or opinions of disinterested persons familiar with such matters.   No such evidence was taken in this case in the Tax Appeal Court, except that of the assessor and the tax-payer who can hardly be called "disinterested."   And we were not requested on the appeal to allow the introduction of any such evidence.   The assessor's method in estimating the value of the leaseholds is as follows.   We use the figures shown by plaintiff's attorney.

| | | |
|---|---:|---:|
| Rents received by plaintiff from sub-tenants  . . . . . . . . . . . . . . . . | | $ 43,311  88 |
| Rents paid by plaintiff to its lessors. | | 41,959  00 |
| Net income from rents. . . . | | $  1,352  88 |
| Net sales of cattle and horses for 1896  .  . . . . . . . . . . . . . . . . . . . | $ 19,379  90 | |
| Value of herds of cattle and horses, is, say $60,000.   Of the sales should be deducted 12 per cent. of the value of the herds. . . . . . | 7,200  00 | |
| | | $ 12,179  90 |
| | | $ 13,532  78 |

This sum of $13,532.78 for eight years would be $108,262.24 which is put as the value of the leaseholds.   The assessor, using other figures which do not agree with those presented by plaintiff, finds the amount to be $103,032.88 and put the valuation at $103,000, discarding the odd figures.   But, as we have seen above, there is no authority, statutory or otherwise, for taking eight times the last year's net profits as the

value of a leasehold. It is suggested that a fairer method would be to value a leasehold at a sum which, invested at a low rate of interest would produce a sum equal to the average annual net profits, allowing a margin for contingencies. This may have been in the mind of the plaintiff corporation's manager when he returned the value of the leaseholds at $40,000. He claims that the books of the corporation show that the average annual net income from the leaseholds for the seven years past is $2411.15, which is about 6 per cent. per annum on $40,000. But we do not adopt this as the rule upon which the valuation of leaseholds should be made, for, in determining the "present worth" of these leaseholds, the time which they have to run is an important element in the calculation, and, moreover, all elements of uncertainty should be considered. We are obliged to come back to the original question, What was the *"full cash value"* of the leaseholds in 1896?

A leasehold may vary in value from year to year. We might, using our own judgment, and considering all the circumstances of this particular case put the valuation at various amounts between that put by the assessor, $103,000 and that returned by the tax-payer, $40,000. But in view of the meagre evidence before us we prefer not to make an arbitrary assessment which might be wide of the mark, and we, finding the assessor's method of calculating the value erroneous, hold that the amount returned by the tax-payer must stand.

Judgment accordingly.

*C. Brown,* for plaintiff, appellant.

*Thurston & Stanley,* for the assessor.