OAHU RAILWAY & LAND COMPANY *v.* JONATHAN
SHAW, Tax Assessor, First Division.

APPEAL FROM TAX APPEAL COURT.

:SUBMITTED OCTOBER 8, 1897.      DECIDED OCTOBER 28, 1897.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE CARTER, IN PLACE
OF FREAR, J., DISQUALIFIED.

The Oahu Railway & Land Company returned to the Tax Assessor
    their cattle, horses and other chattel property and their valuation
    was accepted.   The company noted their leaseholds of land held
    by them and used as cattle ranches, and returned them as without
    value.   The assessor valued the leaseholds at $40,000, taking into
    consideration the annual average profit from sales of cattle:

Held, this was not considering the leaseholds and the live stock on
    the leased land as combined property forming an "enterprise for
    profit" under Section 17 of the Tax Act of 1896, but as showing
    what use the land could be put to.

OPINION OF THE COURT BY JUDD, C.J.

In this case the value of the leaseholds of the lands of Hono-
uliuli, Kahuku, Waimano and Waiawa, Oahu, held by the Oahu
Railway & Land Company is in dispute. The company returned
their leaseholds as worth nothing. The Tax Assessor placed the
value at $40,000, and this was affirmed by the Tax Appeal

Court. The company appealed to this Court. The lease of the lands of Honouliuli and Kahuku have forty-three years of the term unexpired and the company pay an annual rental of $40,000, and, having sublet portions of the land, receive as rentals some $3,000 more than the rent reserved by their landlord. The unlet portions of the land are used by the company as cattle ranches and they return their cattle, horses and other chattel property in detail and claim that the assessor in assessing the leaseholds at $40,000 has valued the ranches as combined property constituting an "enterprise for profit" under Sec. 17 of the Tax Act of 1896, having taken into consideration the profits on sales of cattle, and, that, having assessed the several items of property, the assessment of them in combination is void. In furtherance of this argument it is urged that the value of the bare leaseholds must be viewed without reference to the profits from the cattle grazed upon the land and that it is nothing.

It is true as contended by the company, that it would be contrary to the intention of the statute to tax separate items of property and again to tax their aggregate value when used in combination, for, as the law calls for a tax of one per cent. only, this method would call for a tax of two per cent. But we do not understand from the evidence that the assessor has taxed the "ranch business" of the company as an "enterprise for profit." The company returned their cattle, horses, &c., itemized and noted their leaseholds, claiming they had no value; the assessor has valued each item, to wit: cattle, horses, leaseholds, &c., separately. It would be manifestly impossible to assess the value of the company's combined property as an "enterprise for profit," for by statute a large portion of it is free from taxation. It is not necessary in this case to decide who has the option, the assessor or the taxpayer, to say which method should be followed. For the purposes of this case it is enough to say that both parties here have followed the method of tax assessing the value of the several items of the property. And the exact question is, what is the "full cash value" of the leaseholds. It would be idle to say that they were worth nothing whatever on

the 1st of January, 1897, when there existed at that date an option by the company, which was accepted and executed later, for the sublease to the Oahu Sugar Company for the unexpired term, of some 3,000 acres of land in Honouliuli for a very valuable consideration which paid the rent in full. Other advantageous dispositions of a large portion of this extensive property may be made hereafter. As laid down in the case between the same parties, reported in 10 Haw. 643, "the value of a leasehold depends upon many circumstances, the amount of the rent reserved in the lease, the privileges, covenants and conditions in the indenture, the location of the land, the uses to which it can be put, the population in the locality, the prospect for further development of its resources and we might add, all other considerations economic or political which affect values in general." Several disinterested witnesses gave their estimates of the value of the leaseholds in question. One placed it at $50,-000, another at $40,000, the manager of the company and the owner of the fee considering the leaseholds as of no value. Entering into their calculations is the use to which the lands can be put and the figures show that an average annual net profit of $20,000 has been obtained during five years last past from the cattle and horses alone without essentially diminishing the herds. But the actual present value of the live stock does not enter into this calculation. The estimates show what use the land under these leases can be put to, and the company having placed their value at $40,000 in the return of July, 1896, this valuation being supported by evidence, we sustain the judgment of the Tax Appeal Court, and fix the amount at $40,000.

*C. Brown* for the appellant.

*A. G. M. Robertson* for the Tax Assessor.